UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SARAH M. L'ITALIEN,

        Plaintiff,

   v.

NANCY A BERRYHILL, Acting Commissioner of Social Security,

        Defendant.

CASE NO. 3:17-CV-05327-DWC

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff Sarah M. L'italien filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's denial of Plaintiff's applications for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 6.

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred in his consideration of medical opinion evidence. Had the ALJ properly considered two physician opinions, the residual functional capacity ("RFC") may have included additional limitations. The ALJ's error is therefore not harmless, and this matter is reversed and remanded

pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Order.

FACTUAL AND PROCEDURAL HISTORY

On October 9, 2007, Plaintiff filed applications for SSI and DIB, alleging disability as of June 1, 2006. *See* Dkt. 9, Administrative Record ("AR") 63. Plaintiff has had three ALJ hearings. ALJ Robert M. McPhail held the first hearing on November 3, 2009. AR 78-122. On March 25, 2010, ALJ McPhail issued an unfavorable decision, finding Plaintiff not disabled. AR 63-73. The Appeals Council denied review of ALJ McPhail's decision. AR 52-54. Plaintiff thereafter sought judicial review of the ALJ's decision in the United States District Court for the Western District of Washington. *See* AR 535-37. On November 28, 2011, the Court issued an Order remanding the case to the Commissioner for further administrative proceedings because portions of the hearing recording were inaudible. AR 538-41.

ALJ David Johnson held a second hearing on September 6, 2012. AR 123-78. At the hearing, Plaintiff amended her alleged onset date of disability to December 31, 2009. *See* AR 135, 744. On September 27, 2012, ALJ Johnson issued another unfavorable decision, finding Plaintiff not disabled. AR 29-45. Plaintiff sought judicial review of the ALJ's decision for the second time, and the Court remanded the case to the Commissioner for further administrative proceedings. *See* AR 846-60.

ALJ Johnson held the third hearing in this matter on October 12, 2016. AR 771-815. In a decision dated January 6, 2017, ALJ Johnson again determined Plaintiff to be not disabled. AR 744-61. Plaintiff did not seek review by the Appeals Council, making the ALJ's decision the

final decision of the Commissioner. *See* AR 741-42; 20 C.F.R. § 404.981, § 416.1481. Plaintiff now appeals ALJ Johnson's January 6, 2017 decision.[1]

In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred: (1) in his treatment of the medical opinion evidence; (2) by not giving clear and convincing reasons for discounting Plaintiff's subjective symptom testimony, and not giving germane reasons to reject lay witness testimony; and (3) by making an RFC and Step Five findings that were unsupported by substantial evidence. Dkt. 15, pp. 2, 3-18.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

**I.      Whether the ALJ properly considered the medical opinion evidence.**

Plaintiff argues the ALJ erred in his consideration of the medical opinion evidence. Dkt. 15, pp. 2-7. Specifically, Plaintiff argues the ALJ erred in his treatment of medical opinion evidence from (1) Dr. James Parker, M.D., (2) Dr. Kimberly Wheeler, Ph.D., (3) Dr. Leilani Oana, Ph.D., (4) Dr. Jeff Bremer, Ph.D., (5) Dr. Melinda Losee, Ph.D., (6) Dr. Miller ("Rocky") Garrison, Ph.D., (7) Dr. Jan Lewis, Ph.D., and (8) Dr. Mary Gentile, Ph.D. *Id.* at 3-7.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Embrey v. Bowen*, 849 F.2d

---

[1] When stating "the ALJ" or "the ALJ's decision" throughout this Order, the Court is referencing ALJ Johnson and his January 6, 2017 decision.

418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

A. Dr. Parker

Plaintiff first maintains the ALJ erred in his treatment of examining physician Dr. Parker. Dkt. 15, pp. 3-4.

On April 21, 2012, Dr. Parker performed an evaluation of Plaintiff. *See* AR 728-31. As part of his evaluation, Dr. Parker reviewed records from two of Plaintiff's previous psychological evaluations, reviewed her medical and family history with her, discussed her activities of daily living, and conducted a mental status examination. *See* AR 728-31. In the mental status examination, Dr. Parker found Plaintiff had normal grooming and hygiene, and was dressed appropriately. AR 730. Dr. Parker determined Plaintiff's thinking was linear and goal-directed. AR 730. He also found she was "a bit immature in terms of some of her mannerisms and gestures." AR 730.

Dr. Parker opined Plaintiff had "good attention to detail" and could "do simple and repetitive tasks with normal pace." AR 731. However, "her accuracy would be diminished as would her ability to sustain tasks over time." AR 731. In addition, Dr. Parker determined Plaintiff "would likely be able to do reasonably well in a sheltered work setting." AR 731. Dr.

Parker further opined Plaintiff comes "across as younger than her stated age but in the appropriate work environment would be able to cooperate with supervisors, coworkers and the public." AR 731.

In his decision, the ALJ summarized Dr. Parker's examination and findings. AR 756-57. In part, the ALJ wrote:

> Concerning Dr. Parker's comment about the need for a sheltered work setting, this is not given weight as it is inconsistent with the mild GAF score, the claimant's ability to perform her daily activities, including riding the bus unassisted, and her ability to work. Dr. Parker did not explain the need for a sheltered work setting when the claimant has worked independently in the past. She admitted that she lost her prior job as a laundry aide due to reasons unrelated to her impairments, discussed above. Dr. Parker also found that the claimant's learning disorder was "by history" only and he did not base this on current testing. It is further unclear if the sheltered work setting described is consistent with Social Security regulations. SSR 83-33.

AR 757 (internal citations omitted).

The ALJ gave no weight to Dr. Parker's opinion that Plaintiff would "need" a sheltered work setting for several reasons. *See* AR 757. Plaintiff maintains "none of the ALJ's reasons for rejecting this part of Dr. Parker's opinion are convincing or even legitimate." Dkt. 15, p. 4. However, the ALJ and Plaintiff misconstrue Dr. Parker's opinion. Both the ALJ and Plaintiff state that Dr. Parker wrote Plaintiff would "need" a "sheltered work setting." *See* AR 757; Dkt. 15, p. 4. Yet Dr. Parker's did not opine that Plaintiff *needs* a sheltered work setting; instead, he merely stated Plaintiff would likely "do reasonably well in a sheltered work setting." AR 731. As Dr. Parker did not state Plaintiff was limited to a sheltered work setting, the Court finds his statement that Plaintiff would do well in a sheltered work sitting was not a functional limitation. Therefore, the ALJ did not need to account for this part of Dr. Parker's report.

The ALJ gave "[p]artial weight" to Dr. Parker's remaining opinions, stating:

> The assessment that the claimant could complete simple and repetitive tasks with a normal pace and cooperate with others at work is consistent with the unremarkable examination and the record. It is also consistent with the claimant's ability to perform work activities. The opinion, however, that the accuracy of work and an inability to sustain tasks is vague, and he did not provide any explanation to support this limit. Nonetheless, the above residual functional capacity accounts for an inability to sustain concentration for extended periods.

AR 756-57.

The ALJ wrote that although Dr. Parker's opinions that Plaintiff's accuracy and ability to sustain tasks would diminish over time was "vague," the RFC "accounts for an inability to sustain concentration for extended periods." AR 757. An ALJ need not accept any opinion from a physician that "is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (citation omitted). However, an ALJ cannot discount a physician's opinion in a conclusory manner; rather, the ALJ must state his interpretations and explain why they, rather than the physician's interpretations, are correct. *See Embrey*, 849 F.2d at 421-22.

In this case, the ALJ stated that he accounted in the RFC for Dr. Parker's opinions that Plaintiff's accuracy and ability to sustain tasks would diminish over time. AR 757. But the ALJ failed to explain how the RFC accounts for either of these limitations.[2] *See* AR 757. Because the ALJ claimed he accounted for these findings by Dr. Parker without explaining how he accounted for them – and not expressly providing for them in the RFC – it is unclear whether the ALJ discounted these findings. Hence, the ALJ failed to adequately explain his consideration of Dr. Parker's finding that Plaintiff's accuracy and ability to sustain tasks would diminish over time.

---

[2] The Court notes the RFC provided Plaintiff can perform work that is "quota based" rather than "production paced," and "does not require extended periods of concentration for more than 2 hours." AR 749. To the extent the ALJ attempted to account for Dr. Parker's opinions about Plaintiff's accuracy and ability to sustain work with these limitations, he failed to explain how these RFC limitations account for Dr. Parker's opinions. Accordingly, the ALJ erred. *See Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) (the ALJ must "build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings").

As such, the Court cannot determine whether the ALJ properly considered these findings. The ALJ therefore erred by failing to explain the weight given to this significant probative evidence from Dr. Parker. *See Flores v. Shalala*, 49 F.3d 562, 571 (9th Cir. 1995) (an ALJ's written decision must state reasons for disregarding significant probative evidence); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (the ALJ must "set forth the reasoning behind [his] decisions in a way that allows for meaningful review").

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111)).

Had the ALJ properly considered all of Dr. Parker's opined limitations, the RFC may have included additional limitations. For example, the RFC may have expressly included that Plaintiff's accuracy and ability to sustain tasks would diminish over time. The RFC did not contain such limitations. Thus, if limitations reflecting Dr. Parker's findings were included in the RFC and the hypothetical questions posed to the vocational expert, the ultimate disability determination may have changed. Accordingly, the ALJ's failure to properly consider Dr. Parker's opinion was not harmless and requires reversal. On remand, the ALJ is directed to explain his treatment of all of Dr. Parker's opined limitations.

1    B. Dr. Wheeler

2    Next, Plaintiff argues the ALJ erred in his assessment of medical opinion evidence from
3 examining physician Dr. Wheeler. Dkt. 15, pp. 4-5.

4    On January 18, 2013, Dr. Wheeler conducted a psychological/psychiatric evaluation of
5 Plaintiff.[3] AR 1087-90. As part of her evaluation, Dr. Wheeler conducted a clinical interview and
6 mental status examination of Plaintiff. *See* AR 1087-90. Dr. Wheeler opined Plaintiff was
7 moderately limited in her ability to learn new tasks, communicate and perform effectively in a
8 work setting, and understand, remember, and persist in tasks by following detailed instructions.
9 AR 1089. Dr. Wheeler further found Plaintiff moderately limited in her ability to be aware of
10 normal hazards and take appropriate precautions, complete a normal work day and work week
11 without interruptions from psychologically-based symptoms, and maintain appropriate behavior
12 in a work setting. AR 1089. Lastly, Dr. Wheeler determined Plaintiff had marked limitations in
13 her ability to set realistic goals and plan independently. AR 1089.

14    The ALJ summarized Dr. Wheeler's evaluation, and then stated:

> Great weight is assigned to this assessment since an objective evaluation was performed and the mild to moderate limitations are consistent with the record. The undersigned notes that Dr. Wheeler's comment that no mental disorder provided a substantial barrier to work concurs with her earlier opinion and other evidence in the record.

18 AR 756.

19    The ALJ gave "[g]reat weight" to Dr. Wheeler's January 18, 2013 evaluation, finding it
20 consistent with the record. AR 756. The ALJ found Plaintiff had the RFC to perform:

---

[3] Dr. Wheeler also conducted an examination of Plaintiff on April 2, 2009. AR 471-76. The ALJ discussed both of Dr. Wheeler's examinations. *See* AR 755-56. Because Plaintiff only claims the ALJ erred in his treatment of Dr. Wheeler's January 18, 2013 evaluation, the Court only considers the ALJ's treatment of that evaluation. *See* Dkt. 15, pp. 4-5.

a full range of work at all exertional levels that is low stress meaning that: it consists of simple routine tasks that are quota based work rather than production paced, it does not require extended periods of concentration for more than 2 hours, it allows demonstrated instructions to learn job tasks, it does not require more than occasional adaptation to changes in work processes, it is performed where the general public is not typically present, it does not require interaction with the general public, it does not require mathematical operations, it does not require writing, and it does not require incorporating material the worker has read.

AR 749.

Despite the ALJ's statement that he gave Dr. Wheeler's opinion "great weight," it is unclear whether the ALJ included all of Dr. Wheeler's opined limitations in the RFC. For instance, Dr. Wheeler opined Plaintiff would be moderately limited in her ability to be aware of normal hazards and take appropriate precautions, but the RFC does not contain any limitation related to hazards or precautions. *See* AR 749. Moreover, Dr. Wheeler opined Plaintiff would be moderately limited in her ability to maintain appropriate behavior in a work setting and complete a normal work day and work week without interruptions from psychologically based symptoms. AR 1089. However, it is unclear how these particular limitations are contained in the RFC. As such, the ALJ failed to adequately explain his consideration of all of Dr. Parker's opined limitations, and the Court cannot determine whether the ALJ properly considered these findings. Thus, it is unclear whether the ALJ intended to discount some of Dr. Wheeler's findings. Accordingly, the ALJ erred by failing to explain the weight given to all of Dr. Wheeler's opined limitations.

Additionally, this error was not harmless. Had the ALJ properly considered Dr. Wheeler's opinion, the RFC and hypothetical questions posed to the vocational expert may have included additional limitations. For example, the RFC and hypothetical questions may have included limitations reflecting that Plaintiff would be moderately limited in her ability to be aware of normal hazards and take appropriate precautions, maintain appropriate behavior in a

1  work setting, and complete a normal work day and work week without interruptions from

2  psychologically based symptoms. It is unclear whether the RFC and hypothetical questions

3  contained limitations reflecting these restrictions. Because the ultimate disability determination

4  may have changed, the ALJ's error was not harmless and requires reversal. On remand, the ALJ

5  is directed to explain how he accounts for, or discounts, Dr. Wheeler's opined limitations.

   C.  Drs. Oana, Bremer, Losee, Garrison, Lewis, and Gentile

   Plaintiff further challenges the ALJ's treatment of Drs. Oana, Bremer, Losee, Garrison, Lewis, and Gentile. Dkt. 15, pp. 5-7.

   The Court has determined the ALJ erred in his treatment of Drs. Parker and Wheeler. *See* Sections I. A. & I. B., *supra*. Specifically, the Court determined the ALJ erred by failing to adequately explain his treatment all of the opined limitations from Drs. Parker and Wheeler. *Id.* Because the ALJ's reconsideration of this medical opinion evidence may impact his assessment of the remaining medical opinion evidence, the ALJ is directed to re-evaluate all medical opinion evidence on remand.[4]

   **II.     Whether the ALJ properly discounted Plaintiff's subjective symptom testimony and the lay witness testimony.**

   Plaintiff further alleges the ALJ provided legally insufficient reasons to discount Plaintiff's testimony and the lay witness testimony. Dkt. 15, pp. 7-17. The Court concluded the ALJ committed harmful error in his assessment of the medical opinion evidence. *See* Section I., *supra*. Because the ALJ's reconsideration of the medical opinion evidence may impact his

---

[4] In the Opening Brief, Plaintiff's counsel broadly asserted the ALJ erred by giving these non-examining physicians more weight than the examining physicians. *See* Dkt. 15, p. 7. Although the ALJ must reassess all medical opinion evidence on remand due to his errors on Drs. Parker and Wheeler, the Court notes it will not ordinarily consider issues "that are not specifically and distinctly argued in an appellant's opening brief." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2007) (citation and internal quotation omitted); *see also Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) ("The burden is on the party claiming error to demonstrate not only the error, but also that it affected his 'substantial rights.'").

assessment of Plaintiff's subjective symptom testimony and the lay witness testimony, the ALJ must reconsider this evidence on remand.

### III. Whether the RFC and Step Five findings are supported by substantial evidence.

Plaintiff also asserts the ALJ erred because the RFC and Step Five findings are unsupported by substantial evidence. Dkt. 15, pp. 17-18.

The ALJ committed harmful error by failing to adequately explain his consideration of medical opinion evidence. *See* Section I., *supra*. Accordingly, the ALJ is directed to reassess the RFC on remand. *See* SSR 96-8p, 1996 WL 374184 (1996) (an RFC "must always consider and address medical source opinions"); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective"). As the ALJ must reassess Plaintiff's RFC on remand, the ALJ is further directed to re-evaluate the findings at Step Five to determine whether there are jobs existing in significant numbers in the national economy Plaintiff can perform in light of the RFC. *See Watson v. Astrue*, 2010 WL 4269545, at *5 (C.D. Cal. Oct. 22, 2010) (finding the RFC and hypothetical questions posed to the vocational expert defective when the ALJ did not properly consider two doctors' findings).

### IV. Whether the case should be remanded for an award of benefits.

Lastly, Plaintiff requests the Court remand her claim for an award of benefits. Dkt. 15, pp. 18-19.

The Court may remand a case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit created a "test for determining when

evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.

The Court has determined, on remand, the ALJ must re-evaluate this entire matter properly considering the medical opinion evidence. Therefore, remand for further administrative proceedings is appropriate.

## CONCLUSION

Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this matter is remanded for further administrative proceedings in accordance with the findings contained herein.

Dated this 2nd day of February, 2018.

David W. Christel
United States Magistrate Judge